IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
SEP 27 2012
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.: |
| | : | 12-201(BAH) |
| v. | : | |
| | : | VIOLATION: 18 U.S.C. § 371 |
| DIANA J. ALVAREZ, | : | (Conspiracy to Commit Bank Fraud in |
| | : | violation of 18 U.S.C. § 1344 ) |
| | : | |
| Defendant. | : | |

### STATEMENT OF OFFENSE

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant Diana Alvarez and the United States agree and stipulate that at all relevant times:

1. Defendant Diana Alvarez was a relationship banker at Branch Banking and Trust (BB&T). As a relationship banker, Alvarez opened bank accounts for new and existing customers, made wire transfers from those accounts, performed maintenance on those accounts, and referred clients to mortgage brokers and loan officers. Alvarez therefore had access to account information for BB&T customers, including signature cards which customers were required to sign upon opening an account.

2. BB&T is an insured depository institution that operates in 12 states and the District of Columbia ("District").

3. In or around May 2008, Alvarez was approached by co-conspirator #1 outside of the BB&T branch located in the District of Columbia, where Alvarez worked.

4. Following that initial meeting, between approximately May of 2008 and July of 2008, co-conspirator #1 requested that Alvarez open BB&T bank accounts for co-conspirator #1 using false identifications in exchange for payment of $100. Co-conspirator #1 and Alvarez also discussed schemes to defraud BB&T bank by using fake identifications.



5. On approximately July 15, 2008, co-conspirator #1 approached Alvarez and asked her to provide co-conspirator #1 with BB&T account information. Specifically, co-conspirator #1 requested that Alvarez provide co-conspirator #1 with details on District of Columbia bank accounts and also for signature cards for the accounts on which she provided the information. Co-conspirator #1 offered to pay Alvarez money in exchange for Alvarez providing the information. Alvarez agreed, although she told co-conspirator #1 that she would not give co-conspirator #1 information about District of Columbia-based accounts.

6. On approximately July 15 and 16, 2008, Alvarez, while at work at a BB&T branch in the District of Columbia, queried the bank's computer systems looking for accounts carrying large balances. From this system, she accessed and printed various account statements as well as the signature cards. She provided approximately twenty bank statements, as well as the signature cards, to co-conspirator #1. The details given over by the defendant included the bank customers' names, dates of birth, social security numbers, addresses, phone numbers, and true signatures.

7. Specifically, in furtherance of the conspiracy, Alvarez performed the following overt acts:

- On July 15, 2008, at approximately 4:29 p.m., Alvarez accessed the BB&T computer system to obtain customer information from customer #1.

- On July 15, 2008, at approximately 5:10 p.m., Alvarez accessed the BB&T computer system to obtain customer information from customer #2.

- On July 15, 2008, at approximately 5:55 p.m., Alvarez accessed the BB&T computer system to obtain customer information from customer #3.

- On July 16, 2008, at approximately 5:06 p.m., Alvarez accessed the BB&T computer

2



- system to obtain customer information from customer #4.

- On July 16, 2008, at approximately 5:19 p.m., Alvarez accessed the BB&T computer system to obtain customer information from customer #5.

Alvarez subsequently provided to co-conspirator #1 the names, dates of birth, social security numbers, signature cards, addresses, account numbers, dates of account opening, and account balances for customer #1, 2, 3, 4, and 5. In addition, during the period of July 15, 2008, through July 16, 2008, Alvarez also provided similar information to co-conspirator #1 on approximately fifteen additional accounts.

8. Using the information provided by Alvarez, co-conspirator #1 along with several other unidentified co-conspirators known and unknown to the government posed as the account holders and made the following withdrawals:

- On or about July 15, 2008, co-conspirator #1 discussed with Alvarez that a co-conspirator would be coming into the BB&T branch location in Washington, D.C., where Alvarez worked to withdraw money from customer #3's account. On July 16, 2008, at approximately 1:32 p.m., an unidentified co-conspirator posing as customer #3 withdrew cash from the account of customer #3. During that same encounter, the unidentified co-conspirator assisted by Alvarez wired money to an account held by a co-conspirator. BB&T lost $17,167.51 on these transactions.

- On August 13, 2008, unidentified co-conspirators opened an account under the name of customer #2 at BB&T. Once these accounts were open, on four

3

occasions between August 18, 2008, and August 21, 2008, unidentified co-conspirators transferred money via telephone from customer #2's real account provided by Alvarez to the new fake accounts. Unidentified co-conspirators then withdrew the transferred monies from the fake accounts, leaving BB&T with a loss of $50,419.

- Between October 2, 2008, and October 16, 2008, unidentified coconspirators withdrew monies from the account of customer #4, causing a loss of $70,824.93 to BB&T.

- On October 2, 2008, an unidentified co-conspirator posing as customer #5 transferred and then withdrew money from the account of customer #5, causing a loss of $7,500.

- Finally, on January 14, 2009, an unidentified co-conspirator posing as customer #1 withdrew in cash and attempted to transfer monies from customer #1's account, causing a loss to BB&T of $1,400.

None of the customers authorized the unidentified co-conspirators to withdraw money, as described above. These withdrawals were reasonably foreseeable to Alvarez when she joined the conspiracy and provided co-conspirator #1 with confidential account information. As a result of these account compromises, the banks lost at least $147,311.44.



9. In exchange for providing co-conspirator #1 with the customer information delineated above, Alvarez received cash payments of $300 on or about July 16, 2008.

Respectfully submitted,
RONALD C. MACHEN JR.
UNITED STATES ATTORNEY

By: _____
MARY CHRIS DOBBIE
Assistant United States Attorney
D.C. Bar # 975-939
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-6975

## DEFENDANT'S ACCEPTANCE

I have read every word of this Statement of Offense. Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, after consulting with my attorney, I agree and stipulate to this Statement of Offense, and declare under penalty of perjury that it is true and correct.

9/6/2012
Date

DIANA ALVAREZ
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have discussed this Statement of Offense with my client, Diana Alvarez, and I concur with his decision to stipulate to this Statement of Offense.

9/6/12
Date

Richard Finci, Esquire
Attorney for Defendant Diana Alvarez

5